THE DWELLING–HOUSE INSURANCE COMPANY, PLAINT-IFF IN ERROR, v. FRANK B. SNYDER, DEFENDANT IN ERROR.

1. An agent sent by an insurance company to adjust a loss, has no implied power to delegate his authority to another.
2. A policy issued by a Massachusetts corporation, insuring a building in Freehold, New Jersey, against damage by fire, required the assured to furnish proofs of loss to the company within thirty days after a fire, and also contained this clause: "No officer, agent or representative of the company shall have power to waive any provision or condition of this policy." *Held*, that the local agent of the company at Freehold, having a branch office there, could not absolve the assured from the duty of furnishing proofs of loss within the time limited. *Carson v. Insurance Company*, 14 *Vroom* 300, distinguished.

On error.

Argued at February Term, 1896, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, MAGIE and GARRISON.

For the plaintiff in error, *R. Wayne Parker*.

For the defendant in error, *Frank P. McDermott*.

The opinion of the court was delivered by

DIXON, J. This was an action upon a policy of insurance, issued August 27th, 1892, to the plaintiff by the defendant, a corporation of Massachusetts.

The policy provides that, within thirty days after loss by fire, the assured shall render to the company a statement, signed and sworn to by him, setting forth various particulars therein specified relating to the loss; that the loss shall not become payable until sixty days after such statement has been received by the company; that no suit or action on the policy for the recovery of any claim shall be sustainable unless the assured shall have fully complied with the said requirements, and that no officer, agent or other representative of the company shall have power to waive any provision or condition of the policy.

The property covered by the policy was a dwelling-house in Freehold, New Jersey. It was burned August 9th, 1894. The statement above referred to was not made out until October 25th, 1894, after the company had given written notice to the assured that it would dispute liability because of his failure, and this suit was brought before December 5th, 1894.

To excuse his non-compliance with this requirement of the policy, the plaintiff, at the trial in the Common Pleas of Monmouth county, relied upon a waiver by the agents of the company. One of these agents was a person sent by the company from the home office, in Boston, on August 15th, 1894, to ascertain the amount of the loss; the other was the local agent of the company at Freehold.

The testimony is to this effect: That the agent first mentioned, being in a hurry to leave Freehold, did nothing more than to deputize a Mr. Walsh to act in his stead; that the plaintiff agreed with Mr. Walsh to accept a certain sum in full settlement for the loss, and signed a letter addressed to the company, saying he was willing to do so (which, however, does not appear to have reached the company); that upon his signing the letter, Mr. Walsh told him he had nothing further to do until he heard from the company, and the local agent, who was present at the interview, said the same thing.

On this testimony the trial judge charged the jury, in substance, that each of these agents had authority to waive the proofs of loss, and left to the jury the question whether either

of them had, in fact, done so. To this, exception was duly taken.

We think there was error in these rulings.

As to the agent from the home office, there was not the least evidence that he said or did anything which could legally be deemed a waiver. His attempted delegation of authority to Mr. Walsh was utterly nugatory, according to the maxim "*delegata potestas non potest delegari*." *Broom Leg. Max.* 384. What Mr. Walsh did or said was not of the slightest force against the defendant.

With respect to the conduct of the local agent, the problem is not so simple. His authority is thus defined by himself: "I am the resident representative of the company at Freehold; I have charge of the issuing of policies; the policies are sent to me in blank, signed by the president and secretary, and I fill them up, countersign them and issue them to the assured, collect the premium and forward it to the company, less my commission." On the policies he is described as the duly authorized agent of the company, at its branch office, in Freehold, New Jersey.

The authority thus indicated appears to be very general, and if the assured were not chargeable with notice of any limitation upon it, he would, I think, be justified in concluding that it embraced the power to waive service of proofs of loss. But there can be no question of the right of the company to circumscribe the authority of its agents, provided it gives due notice of the limitation to those with whom it deals. Such limitation and notice are contained in the contract with the plaintiff. *Catoir* v. *American Life Insurance Co.*, 4 *Vroom* 487. The policy declares that no officer, agent or representative of the company shall have power to waive any provision or condition of the policy except certain ones which do not include that now under consideration.

In *Carson* v. *Jersey City Insurance Co.*, 14 *Vroom* 300, 310, it was said that a clause in the policy relating to the terms and conditions of insurance applies only to those conditions and provisions which refer to the formation and continuance

of the contract, and not to those which are to be performed after the loss has occurred in order to enable the assured to sue, and *Franklin Fire Insurance Co.* v. *Chicago Ice Co.,* 36 *Md.* 102; *Blake* v. *Exchange Insurance Co.,* 12 *Gray* 265, and *Priest* v. *Citizens' Insurance Co.,* 3 *Allen* 602, are cited to support the proposition. Of the cases mentioned the leading one is that in 12 *Gray* 265, and its purport is shown by the following extract from the opinion of the court: "The policy is declared to be made and accepted in reference to the conditions thereto annexed, which are made part of the policy. How far the provisions, as to the form of the notice and proofs of loss, after a valid contract has been made and a loss taken place under it, can be regarded as conditions of the contract itself, it is not necessary to determine, nor whether their being classed under the designation of conditions of insurance could change the nature and purpose of the stipulations themselves, for it seems to us that the question is not one as to the provisions of the contract, but as to the performance of the provisions. The plaintiff is not setting up a contract from which a material provision has been omitted by the oral consent of the officers of the company. The policy contained the usual provisions as to notice and proofs of loss. Upon the happening of the loss the plaintiff sent to the defendants certain notices and proofs in pursuance of the requisition of the by-laws upon the subject. If the notices were defective, good faith on the part of the underwriters required them to give notice to the assured. If they failed to do so, * * * they are, upon familiar principles of law, estopped to set up and rely upon the defective notices. * * * If the plaintiff relied upon any exemption from the obligations of the policy, or any modification of them by the agents or officers of the company, or any addition, he must show such exemption, modification or addition by endorsement upon the policy. But the question whether a stipulation as to notice and proofs of loss has been fulfilled, or whether the defendant is in a condition to be heard on that question, must be tested by the ordinary rules of law. There is a time when objections in matters of form must be taken. If they are not then made,

they never can be made. The law does not say that the procedure was perfect, but that the question is not open."

It thus appears that the court did not deal directly with the clause against waiver, and, so far as the clause was mentioned incidentally, its full force was assumed.

In 3 *Allen* 602, there was no express prohibition against waiver, and the evidence tended to show a waiver by the board of directors itself. In 36 *Md.* 102, the decision turned upon the meaning of the word "conditions," and the court, following the suggestions in 12 *Gray* 265, confined it to those "provisions of the policy which enter into and form a part of the contract of insurance and are essential to make it a binding contract between the parties, and which are properly designated as conditions."

But the phrase now under review, "any provision or condition of the policy," is certainly of broader import than the word "condition," standing alone, or the words "terms and conditions of insurance," which are found in *Carson* v. *Jersey City Insurance Co., ubi supra.* Without doing violence to the fair meaning of the language, it cannot be held that a stipulation in the policy prescribing what the assured shall do after a loss in order to perfect the legal liability of the company, is not "a provision of the policy."

We are therefore constrained to decide that the local agent had no authority to abrogate the requirement as to proofs of loss. Had the plaintiff delivered to him what the plaintiff deemed such proofs, it may well be that the duty of the company to examine such proofs and if found defective to make prompt objection to the plaintiff, would at once have arisen, and a want of such objection would have estopped the company from denying that the proofs were sufficient. *State Insurance Co.* v. *Maackens,* 9 *Vroom* 564 ; *Hibernia Insurance Co.* v. *Meyer,* 10 *Id.* 482. But such a situation would be essentially different from that now existing, where the plaintiff contends not that the circumstances legally show his performance of the contract as written, but that, by authority of the company, the written contract has been changed.

The judgment must be reversed.